ANDREW HENDRICKS v. LESURE LUMBER COMPANY.[1]

June 10, 1904.

Nos. 13,836—(150).

**Master and Servant.**

In an action to recover damages for an injury received by respondent while working in a sawmill as a tail sawyer, the evidence tended to show:

1. That the head sawyer, whose duty it was to regulate the distribution of lumber as it passed from the saw, was not a fellow servant of respondent.[2]

2. That appellant was negligent in not furnishing for respondent's use suitable and safe appliances for the reversing of the rollers which pro-pelled the lumber.

3. That respondent was not guilty of contributory negligence, and did not assume the risk, in attempting to manipulate the reversing rod in a certain manner, there being no handle at the proper place.

Action in the district court for St. Louis county to recover $5,000 for personal injuries. The case was tried before Ensign, J., and a jury, which rendered a verdict in favor of plaintiff for $1,250. From a judgment entered pursuant to the verdict, defendant appealed. Affirmed.

*Adams & Miller,* for appellant.

*John A. Keyes,* for respondent.

[1] Reported in 99 N. W. 1125; 100 N. W. 638.

[2] This paragraph withdrawn. See Opinion, page 322.

LEWIS, J.

Appellant was operating a two-band sawmill, and respondent was employed on the night shift as a tail sawyer. The boards fell from the saw upon a series of rapidly moving live rollers, which carried them to their proper places in the mill. It was the duty of the tail sawyer to guide and assist the boards and slabs as they fell upon the live rolls, and to trip a lever with his foot, which had the effect of sending the proper boards to the resaw; and, in case one got too far down the rolls, it was the custom to reverse the rolls and bring it back, if there was time, or, if not, then it passed on over the system of rolls, was piled up, and brought back later, when opportunity afforded. The rolls were nearly a foot in diameter, and set in a table about three feet wide. The gearings which propelled the rolls were all connected by a shaft, and were covered in the following manner: A plank two inches thick and seven or eight inches wide ran along the side of the table covering the ends of the gearings, and a similar piece was at the end of the table where the tail sawyer stood, but the gearings were uncovered at the bottom. The top covering consisted of a plank about a foot wide, and was unfastened. The gear at the end of the first roll was located within a few inches from the end of the table, and consisted of two cogwheels, each five or six inches in diameter, meshing from the bottom, and, when the rolls were reversed, meshing from the top. The rolls were reversed or stopped by means of pulling out two or three inches a rod which extended along inside the box and projected at the end of the table.

Respondent stood at the end of the table while at work; the trip lever to send the boards to the resaw being near his right foot, and the end of the rod which reversed the rolls being near his left knee. Day and night sawyers were in charge, and it was their duty to determine the kind of boards logs should be cut into, and the disposition of the boards—whether they should take their course down the rolls, or be sent to the resaw by the tail sawyer. The sawyer communicated by means of signs with the carriage riders as to the sawing, and with the tail sawyer, directing the disposition of the boards under his control. As a general rule, the tail sawyer knew where to send the boards, and acted upon his own judgment, but he was under the supervision of the sawyer.

Respondent was a man forty years old; had resided in the United States twenty years, and for fifteen years had worked more or less about sawmills, but had never been employed as tail sawyer except one season, and had about one half day's experience as tail sawyer with live rolls. He had been in appellant's employ about two weeks. When engaged, the mill superintendent showed him where to work, and thereafter he was under the direction of the head sawyer. At the time he commenced work the handle at the end of the reversing rod was broken off, and it does not appear that respondent ever knew there had been a handle to the rod. This rod ordinarily projected one or two inches beyond the end of the table, so that the tail sawyer could take hold of it and pull it out; but there was considerable play to it, and occasionally it worked in so that he could not get hold of it. Three or four nights before the accident, the sawyer noticed a board going down the rolls which should have gone to the resaw, and, not being able to attract the attention of the tail sawyer to give the signal to reverse the rolls, left his place and went down, and himself reversed the rolls by putting his hand under the table and taking hold of the rod and pulling it out. This act was noticed by respondent, but no express directions were ever given him to do likewise.

On the occasion of the accident the head sawyer noticed some boards going down the rolls which he wanted returned, and motioned to respondent to reverse the rolls and send them back. At that time the reversing rod had worked back so that he could not get hold of it, and he reached underneath the side of the table for the purpose of taking hold of the rod; and in so doing his hand came in contact with the gearing of the first roll, and was injured. Respondent recovered a verdict, and appellant's liability was placed upon the following grounds: That the instrumentality furnished respondent for the purpose of reversing and controlling the rolls was defective and unsafe, and not suitable for the purpose required, and that the gearing was not properly protected.

The questions now open for discussion are: (1) Was the head sawyer a vice principal or fellow servant? (2) Was appellant negligent as charged? (3) If so, was respondent guilty of contributory negligence, or did he assume the risk, in attempting to manipulate the reversing rod as he did?

1. It is unnecessary at this time to review the law of fellow servant. The rule is well defined by numerous decisions of this court. It satisfactorily appears from the evidence that the sawyer was not upon an equal footing with respondent. The duties of the sawyer were not limited alone to directing what class of boards should be sent to the resaw. It was also a part of his duty to direct respondent and see that he performed his work correctly, and, in pursuance of such duty, whenever, in the judgment of the sawyer, boards were permitted by the tail sawyer to go down the rolls which should have been sent to the resaw, he was signaled to reverse the rolls. If the sawyer's duty had been confined to determining what boards should be sent to the resaw, leaving it to the tail sawyer to decide when and in what manner to reverse the rolls for that purpose, a different question would arise. But it was the general duty of the sawyer to direct the movements of the lumber as it passed under respondent's control, and such duty necessarily included the direction to reverse the rolls. Respondent was required not only to trip the foot lever which sent the proper boards to the resaw, but also to reverse the rolls and return the boards that unavoidably passed by. If it was a part of the general duty of the head sawyer to direct the actions of respondent in the performance of these duties, and, if the reversing rod at critical periods could not be manipulated from the position in which respondent stood at the end of the table, appellant could hardly avoid the probable effect as an object lesson to the inexperienced servant. Under these circumstances, it cannot be said, as a matter of law, that the head sawyer was a fellow servant of respondent, and the court properly submitted the question to the jury.

2. We receive the impression from the description of the gearings and covering that for all practical and ordinary purposes they were properly covered and sufficiently protected, but it does not follow that, because under ordinary circumstances there was no negligence in this respect, appellant is relieved from liability under the peculiar circumstances of this case. Admittedly, the reversing rod was defective. The handle by means of which it was operated was broken off, and upon occasion there was no way to pull it from the head of the table, where respondent stood in the performance of his duties. In this respect appellant was negligent in failing to provide a proper and safe appliance.

92 M.—21

3. As before stated, had it not been for the object lesson furnished respondent as to how to manipulate the rod, another question would arise. But it cannot be assumed that respondent wilfully placed his hand in the cogs, although he knew or should have known about where the gearing was located. He was placed in an emergency which required rapid action. There is no evidence that respondent knew the gearing was entirely unprotected from below. He may have assumed that it was, except at the point where he noticed the sawyer put his hand. It does not follow that, because he knew the gearing was unprotected at the top, it was not protected in part, at least, underneath. Under all these circumstances, it was fairly a question for the jury to say whether or not he assumed the risk of manipulating the reversing rod in the manner he did, and whether he was guilty of contributory negligence. In this connection attention is called to the case of Jensen v. Regan, infra, page 323, which is clearly distinguishable.

Judgment affirmed.

On July 22, 1904, the following opinion was filed:

PER CURIAM.

Upon application for reargument, our attention having been called thereto, it appears that, through inadvertence, we assumed that the trial court submitted to the jury the question whether the head sawyer was a vice principal. In that respect we were mistaken, the case having been finally submitted to the jury upon two issues only: First, was appellant negligent in not furnishing safe and suitable appliances? and, second, was respondent guilty of contributory negligence?

The liability of appellant did not necessarily depend upon the relation existing between the head sawyer and respondent, and it was not necessary to determine or discuss the question of fellow servant. The first proposition of the syllabus, and all that is said in the opinion with reference to the fellow-servant question, is accordingly withdrawn.

The decision in other respects is approved, and the motion for reargument is denied.